Warren Springer, Defendant in Error, v. Samuel Bingham's Son Mfg. Co., Plaintiff in Error.

### Gen. No. 14,624.

LANDLORD AND TENANT—*provision of lease as to supplying of light construed. Held,* under the terms of the lease in question in this connection, that the landlord was not obligated to purchase current from an outside source and furnish it to the tenant, but that in the event of the landlord's temporary inability to furnish current by reason of accident, etc., he was given a reasonable time in which to make repairs, and that if he made such repairs and resumed the supply of current within a reasonable time, no obligation attached against him.

*Assumpsit.* Error to the Municipal Court of Chicago; the Hon. JUDSON F. GOING, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed November 19, 1909.

WILLARD & EVANS, for plaintiff in error.

STEDMAN & SOELKE, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The controversy involved in this proceeding turns upon the construction of a written lease given by Warren Springer, defendant in error, to Samuel Bingham's Son Manufacturing Company, plaintiff in error, of the premises known as Nos. 195-207 South Canal street, Chicago. Springer is the owner and operator of a large manufacturing building containing the above premises. The Bingham Company, the lessee, conducts an extensive plant in the premises for the manufacture of printers' inking rollers. The lease is dated March 17, 1897, and grants to the Bingham Company a term from May 1, 1897, to April 30, 1902. Among other covenants in the lease, the lessor was to furnish, Sundays and legal holidays excepted, steam for the heating apparatus of said premises, when necessary, from October to May, inclusive, in each year, and sufficient live steam through suitable pipe conduits (lessee to furnish and maintain all steam connections and properly trap the same) and sufficient horsepower for the operation of such machinery and appliances as the lessee shall or may place in said premises, except electric dynamos for lighting purposes, for ten hours *per diem*, except as prevented by accident or unavoidable delay, and to furnish during the term, at such times as his electrical appliances are in operation, the electric current necessary to operate nine arc electric lights, each of 2000 candle power capacity.

The lease further provides that the lessor shall be allowed for each year of the term, for repairing or erecting machinery, or other work, 120 hours between the hours of 7 a. m. and 6 p. m., besides Sundays and legal holidays, during which time no power, live steam, steam heat, water, elevators or electric light need be furnished to the lessee, said 120 hours to be taken, selected and distributed when and as the lessor may see fit, consecutively or not, as the lessor may elect. No stoppage of live steam or heat or power or water or elevators or electric lights of less than two hours at any one time should be considered as part of, or de-

ducted from the 120 hours, and the lessor should not be liable therefor, nor should there be any abatement or deduction to the lessee on account thereof. In the event of failure by the lessor to furnish electric light as therein agreed, through accident or otherwise, a deduction should be made from the rent reserved at the rate of 30 cents *per diem,* while such failure continued, for each light therein agreed to be furnished, as liquidated damages.

By an indenture dated May 1, 1907, between the parties, the lease, and the extension thereof dated October 25, 1901, was extended to include additional space, and a term expiring April 30, 1912. In the extension the lessor agreed to furnish electric current to the lessee for 16 arc lamps of the same or similar power to those then in use in the building and suitable wiring to connect the leased premises with his dynamo.

The record shows that about 2 o'clock in the afternoon of November 14, 1907, the electric lights in the leased premises failed and were not furnished for a period of nine days and a fraction, except for a short time on November 26th. It appears that the fly-wheel or driving pulley on the main engine in the lessor's building broke on November 13, 1907, and caused some damage to the electric appliances. This accident cut off about 1000 horsepower from the building, and left only a small auxiliary engine of about 200 horsepower in service. This small engine was connected with the elevators and with an electric generator, but it was insufficient to generate lights for the whole building. Springer subsequently arranged with the Edison Company to furnish electric current for 800 horsepower, but did not turn any of this power into the premises of the Bingham Company, claiming that the voltage was too great for the Bingham Company's lamps, and would burn them up. As to this claim of Springer there is a controversy in the evidence, evidence of plaintiff in error tending to show that if the Edison Company current had been turned on to the

premises of the Bingham Company, it would have been used.

The Bingham Company paid the February, 1908, rent of its premises, except $84.75 thereof for which amount it claimed a set-off or recoupment for failure on the part of Springer to furnish electric light nine days at thirty cents per day for each light, $67.50; and for failure to furnish heat $15; and third for lumber used in installing electric cables $1.75.

Springer brought suit to recover the rent unpaid and the Bingham Company sought to set off or recoup the above items against it. The trial court allowed only the second item of $15 and gave judgment for $69.75.

No evidence was offered on the trial as to the third item, and no question is here made as to its disallowance. It is urged, however, on behalf of plaintiff in error that its claim for failure to furnish electric light current should have been allowed, under the provisions of the lease.

No claim is made in the evidence of any unnecessary delay in repairing the engine, or electric appliances. The contention of plaintiff in error is, that inasmuch as Springer could and did arrange with the Edison Company, an outside agency, for electric current, he was bound under the provisions of the lease to deliver the current to plaintiff in error, in the demised premises. Stated in other words, this contention is that Springer, under the provisions of the lease, and the circumstances shown, was bound to purchase current from an outside source and furnish it to plaintiff in error, where that could be done, while necessary repairs were being made to his machinery.

We cannot assent to this contention. We find no such covenant in the lease in express terms, and as we understand the contentions of plaintiff in error it is not claimed there is any such express covenant or agreement. It is, however, urged that the covenants above mentioned when construed fairly, and according

to the manifest intention of the parties, and so as to maintain a reciprocity between the contracting parties, require that Springer should have a reasonable time, in case of his temporary inability to furnish heat and electric current by reason of the accident, fire or the like, in which to place himself in condition to resume the service contracted for, and such only was the intent of the 120 hour clause. With this interpretation of that clause we are inclined to agree, for we do not think that by that clause it was intended to give Springer the right to deprive plaintiff in error of the service contracted for, and absolutely vital to the prosecution of its business arbitrarily or capriciously, and without any necessity therefor during the period named or any part of it. But this construction of the clause falls far short of compelling Springer to purchase electric current of any available outside agency for plaintiff in error while he was necessarily engaged in repairing his machinery. To hold that it requires such purchase by him would be reading into the lease a provision not expressed in it, or implied in any expressed covenant. This we are not permitted to do under the law.

The conceded facts in the record leave no room for question as to the reason why defendant in error ceased furnishing the lights to plaintiff in error. It was due to the accident to the engine relied upon mainly to furnish the necessary power. It is also clear, we think, from the evidence that the auxiliary engine used by defendant in error was not equal to the task of supplying the electric current for lights in addition to the other service performed by it, if defendant in error was required to bring that engine into that service by the lease. Repairs to the main engine were made necessary by the accident. They were in fact made within a reasonable time according to the evidence, and within the one hundred and twenty hours reserved in the lease.

The covenants and agreements of the lease are expressed in terms so clear that the meaning thereof, and the intention of the parties are obvious, and there is no occasion to resort to any construction of the contract, or particular clauses thereof, for the purpose of ascertaining their true intent.

We think the judgment of the Municipal Court is correct, and it is affirmed.

*Affirmed.*